CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 2 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |  |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | Case No. 7:13cr00036 | |
| v. | ) | | |
| | ) | | |
| CODY MORRIS DOOLEY, | ) | | |
| | ) | By: | Michael F. Urbanski |
| Petitioner. | ) | | United States District Judge |

## MEMORANDUM OPINION

Petitioner Cody Morris Dooley brings this habeas petition under 28 U.S.C. § 2255, asking the court to vacate or correct his sentence in light of the United States Supreme Court's recent decision in Johnson v. United States, 135 S. Ct. 2551 (2015). The government has moved to dismiss Dooley's § 2255 motion. The issues have been thoroughly briefed, and the parties appeared before the court for oral argument on November 17, 2016. For the reasons that follow, the court will **GRANT** Dooley's § 2255 petition (ECF No. 50) and **DENY** the government's motions to dismiss (ECF Nos. 56 & 58).

### I.

On December 17, 2013, the court sentenced Dooley to 180 months of incarceration following his guilty plea to a violation of 18 U.S.C. § 922(g)(1), charging him with being a felon in possession of a firearm. Because the court determined that Dooley had three or more qualifying convictions under the Armed Career Criminal Act (the "ACCA"), he was subject to 18 U.S.C. § 924(e)'s mandatory minimum sentence of 180 months, rather the 120-month maximum sentence otherwise authorized under § 924(a)(2). The court calculated the sentencing guideline range as being 180 to 188 months and sentenced Dooley to 180 months

incarceration. Dooley was remanded to the custody of the Bureau of Prisons, where he remains with an estimated release date in June 2026.

The Presentence Investigation Report ("PSR") prepared in Dooley's case identifies three qualifying predicate convictions that give rise to the ACCA enhancement: statutory burglary (paragraph 24), possession of marijuana with intent to distribute (paragraph 27), and unlawful wounding (paragraph 31). ECF No. 44, at ¶ 19. Dooley did not object to the PSR's conclusion that he qualified as an Armed Career Criminal, subjecting him to § 924(e)'s 180-month mandatory minimum sentence.

The issue now facing this court is whether, following the decisions of the United States Supreme Court in <u>Johnson v. United States</u>, 135 S. Ct. 2551 (2015), and <u>Welch v. United States</u>, 136 S. Ct. 125 (2016), Dooley's ACCA enhancement remains lawful.

## II.

Under 28 U.S.C. § 2255, a federal inmate may move the sentencing court to vacate, set aside, or correct the prisoner's sentence. Courts may afford relief where "the sentence was imposed in violation of the Constitution or the laws of the United States." <u>Id.</u> § 2255(a). If the court determines the sentence was unlawfully imposed, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." <u>Id.</u> § 2255(b).

A convicted felon found guilty of possessing a firearm faces a maximum sentence of 120 months. 18 U.S.C. § 924(a)(2). However, the ACCA provides for a mandatory minimum sentence of 180 months when a defendant was previously convicted of at least three prior serious drug offenses or violent felonies. <u>Id.</u> § 924(e)(1). A violent felony is defined as:

2

> Any crime punishable by imprisonment for a term exceeding
> one year . . . that –
> (i) has as an element the use, attempted use, or threatened use
> of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, ~~or~~
> ~~otherwise involves conduct that presents a serious potential risk~~
> ~~of physical injury to another.~~

Id. § 924(e)(2)(B) (strikeout added).

In 2015, the Supreme Court invalidated the language stricken above after finding it void for vagueness. Johnson v. United States, 135 S. Ct. 2551 (2015) ("Johnson II").[1] Though often parsed into three clauses—the force clause, the enumerated clause, and the residual clause—§ 924(e)(2)(B) is comprised of two numbered subsections. See Begay v. United States, 553 U.S. 137, 142-44 (2008). Specifically, the first subsection states:

> (i) has as an element the use, attempted use, or threatened
> use of physical force against the person of another; or
> ("Subsection (i)")

18 U.S.C. § 924(e)(2)(B). The second subsection states:

> (ii) is burglary, arson, or extortion, involves use of
> explosives, ~~or otherwise involves conduct that presents a~~
> ~~serious potential risk of physical injury to another.~~
> ("Subsection (ii)")

Id. Subsection (ii) lists several specific "enumerated offense" crimes—burglary, arson, extortion, and use of explosives—that amount to violent felonies. Subsection (ii) goes on to encompass any crime that "otherwise involves conduct that presents a serious potential risk of injury."

---

[1] The court refers to the 2015 Johnson decision as "Johnson II" to distinguish it from the Supreme Court's earlier decision in Johnson v. United States, 359 U.S. 133 (2010), concerning the force clause of § 924(e).

3

The second portion of Subsection (ii)—the part of the statute deemed unconstitutional in Johnson II—is often called the "residual clause." The residual clause refers to crimes that are "similar to the listed examples in some respects but different in others—similar, say in respect to the degree of risk it produces, but different in respect to the 'way or manner' in which it produces that risk." Begay, 553 U.S. at 144. Accordingly, a crime, for ACCA purposes, cannot qualify as both an enumerated offense and as a residual offense. Id. A contrary interpretation would read the word "otherwise" out of Subsection (ii). Id. Rather, a predicate conviction is an enumerated offense, a residual offense similar to an enumerated offense, or neither. This understanding of § 924(e) was confirmed in James v. United States, 550 U.S. 192 (2007), and aligns with the court's conclusion in this case.

In James, the Supreme Court determined that neither attempted burglary nor Florida's burglary statute was properly considered as an enumerated offense under Subsection (ii). Id. at 212-13. This is so because, as explained below, the enumerated offense of burglary has been defined by the Supreme Court in a manner that is incongruous with the way many states have written their burglary statutes. Because Florida's version of burglary and attempted burglary did not fall within the definition of generic burglary but posed a degree of risk similar to the ACCA's enumerated version of burglary, the government could rely "on the residual provision of [Subsection (ii)], which—as the court has recognized—can cover conduct that is outside the strict definition of, but nevertheless similar to, generic burglary." Id.

4

Thus, when the Court struck down the ACCA's residual clause in <u>Johnson II</u>, the ACCA enhancement applied in <u>James</u>, based solely on the residual clause, fell as well.[2] 135 S. Ct. at 2563 ("We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our contrary holdings in <u>James</u> and [<u>United States v.] Sykes</u>, [564 U.S. 1 (2011),] are overruled. Today's decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony.").

Whether the Virginia crime of statutory burglary falls within the enumerated clause portion or the residual clause portion of Subsection (ii) is dispositive in determining whether <u>Johnson II</u> reaches Dooley's conviction under the ACCA. Because the court determines that Virginia statutory burglary—now and since <u>Taylor v. United States</u>, 495 U.S. 575 (1990), was decided—does not qualify as one of the enumerated offenses in Subsection (ii) of § 924(e)(2)(B), Dooley's claim is timely, procedurally proper, and unlawful in light of <u>Johnson II</u>.[3]

### III.

The federal habeas corpus statute under which Dooley seeks relief, 28 U.S.C. § 2255(f), contains a one-year statute of limitations. The government argues that Dooley's habeas petition is untimely as it was not filed within one year of the date his judgment became final. 28 U.S.C. § 2255(f)(1). Dooley contends that his petition was timely filed

---

[2] The fact that <u>Johnson II</u> struck down the ACCA enhancement in <u>James</u>, founded as it was solely on the residual clause, does not affect the validity of the reasoning in <u>James</u> addressed above, that the Florida burglary and attempted burglary statutes fell outside the enumerated clause.

[3] Dooley argues in his § 2255 motion that neither his Virginia statutory burglary conviction nor his unlawful wounding conviction qualifies as a violent felony under the ACCA in light of Johnson II. The court need not address whether Dooley's unlawful wounding conviction qualifies as a violent felony under § 924(e) for purposes of the ACCA enhancement, however, because the issue is resolved by the court's analysis as to Dooley's statutory burglary conviction.

5

pursuant to § 2255(f)(3), as he filed it within one year of the Supreme Court's decision in Johnson II. Under § 2255(f)(3), the one-year statute of limitations period begins on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactive applicable to cases on collateral review."

The government responds that Johnson II has nothing to do with Dooley's case. Dooley was convicted of Virginia statutory burglary, which the government contends was an enumerated offense under the ACCA, and Johnson II expressly held that it had no effect on the operation of the enumerated clause.

Because, as explained below, statutory burglary in Virginia is broader than Taylor's definition of generic burglary, Dooley's statutory burglary conviction could have been deemed a violent felony for purposes of the ACCA only by way of the residual clause. Dooley's residual clause enhancement was not subject to attack until Johnson II was decided, after which he had one year to file his § 2255 claim.

## IV.

The government next argues that Dooley's claim is procedurally defaulted because he did not previously preserve the issue. Dooley argues that default does not bar consideration of his Johnson II claim because he satisfies the cause and prejudice standard under Supreme Court precedent.

Generally speaking, a petitioner cannot raise an argument in a post-conviction proceeding that he did not raise earlier on direct appeal. See, e.g., Sanchez-Llamas v. Oregon, 548 U.S. 331, 351 (2006) (citing Massaro v. United States, 538 U.S. 500, 504 (2003), and

6

Bousley v. United States, 523 U.S. 614, 621 (1998)). However, courts may excuse procedural default where a defendant is able to demonstrate "'cause' and actual 'prejudice.'" Bousley, 523 U.S. at 622 (citing Murray v. Carrier, 477 U.S. 478, 485 (1986), and Wainwright v. Sykes, 433 U.S. 72, 87 (1977)).

For the same reason that Dooley's claim is timely, he meets the cause requirement of procedural default. In short, because he could not challenge his sentence under the ACCA until Johnson II was decided, cause exists.

In Murray, the Supreme Court noted that cause, as could excuse procedural default, requires "some objective factor external to the defense [that] impeded counsel's efforts to comply" with the procedural requirements to raise a claim. 477 U.S. at 488. While Murray did not provide "an exhaustive catalog of such objective impediments," it noted "that a showing that the factual or legal basis for a claim was not reasonably available to counsel" could constitute the required objective impediment. Id. (citing Reed v. Ross, 468 U.S. 1, 16 (1984)). Reed holds that cause is established "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel." 468 U.S. at 16. In that discussion, Reed described three examples of such novelty:

> First, a decision of this Court may explicitly overrule one of our precedents. Second, a decision may overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved. And, finally, a decision may disapprov[e] a practice this Court arguably has sanctioned in prior cases.

Id. at 17 (internal quotations and citations omitted). Reed noted that when a case falls into one of the first two categories and is given retroactive effect, "there will almost certainly have been no reasonable basis upon which an attorney previously could" have made the

defaulted argument. Id. "Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement." Id.

Until the Supreme Court overruled James in Johnson II, Dooley had no ability to raise a challenge to his ACCA conviction. The James Court rejected a suggestion raised by Justice Scalia's dissent that the residual clause was unconstitutionally vague. "While ACCA requires judges to make sometimes difficult evaluations of the risks posed by different offenses, we are not persuaded by Justice Scalia's suggestion—which was not pressed by James or his amici—that the residual clause is unconstitutionally vague." James, 550 U.S. at 210 n.6. Between James and Johnson II, the Court continued to consider the application of the residual clause to a variety of state crimes, effectively precluding any constitutional challenge to it. See Sykes, 564 U.S. at 12-16; Chambers v. United States, 555 U.S. 122, 127-30 (2009); Begay, 553 U.S. at 145-48. The court thus finds that the legal basis for Dooley's claim was not reasonably available to him before Johnson II was decided, establishing the cause element excusing his procedural default.

In reaching this conclusion, the court distinguishes the novelty of the challenge made available only after Johnson II was decided with the frequently litigated issue facing the Court in Bousley, upon which the government relies, as to whether mere possession of a firearm constituted use under 18 U.S.C. § 924(c)(1). There the Court noted that:

> The argument that it was error for the District Court to misinform petitioner as to the statutory elements of § 924(c)(1) was most surely not a novel one. Indeed, at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that "use" is synonymous with mere "possession."

8

<u>Bousley</u>, 523 U.S. at 622 (internal citations omitted). To support its holding that futility cannot constitute cause, the <u>Bousley</u> court quoted <u>Engle v. Isaac</u>, 456 U.S. 107, 130 n.35 (1982), for the proposition that "futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" But this case is a far cry from <u>Engle</u>. There the defendants did not object to a jury instruction that required the defendant in an Ohio murder case to prove self-defense. The Court noted that its decision in <u>In re Winship</u>, 397 U.S. 358 (1970), decided four and one-half years before the first of defendants' criminal trials, "laid the basis for their constitutional claim," that the prosecution should bear the burden of disproving an affirmative defense. <u>Engle</u>, 456 U.S. at 131. "Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for procedural default." <u>Id.</u> at 134.[4]

Nor does this case resemble the circumstances facing the Fourth Circuit in <u>United States v. Pettiford</u>, 612 F.3d 270 (4th Cir. 2010). There, defendant had at the time of sentencing a basis to challenge two of his predicate convictions, yet chose not to do so. Nothing about Pettiford's subsequent habeas challenge to those convictions concerned the situation presented here, where the claim springs from a novel change of law made retroactive by the Supreme Court on collateral review. In short, while the circumstances establishing cause in <u>Reed</u> were not available to Pettiford, they exist here.

The government likewise argues that the Fourth Circuit's opinion in <u>United States v. Mikalajunas</u>, 186 F.3d 490 (4th Cir. 1999), supports a finding of no cause here. As with

---

[4] The Court in <u>Reed</u> expressly distinguished the factual setting of <u>Engle</u> for the same reason. <u>Reed</u>, 468 U.S. at 19-20.

9

Pettiford, however, Mikalajunas did not involve a right newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. Rather, it concerned an argument on an unsettled area of law which counsel either did not recognize or chose not to pursue at sentencing. Id. at 493.

Unlike the circumstances in Bousley, Engle, Pettiford, and Mikalajunas, the bolt of lightning from the clear blue sky that struck down the residual clause in Johnson II was so novel that it was not reasonably available to counsel. As such, it constitutes cause to excuse procedural default.

Dooley also easily meets the prejudice requirement. To show prejudice, a petitioner need show only that without an error, the proceedings would have been different. Strickler v. Greene, 527 U.S. 263, 289 (1999). In this case, had the sentencing court not applied the ACCA enhancement, Dooley's statutory maximum penalty would have been only 120 months, as opposed to the 180-month sentence he received following enhancement under the ACCA. Plainly, Dooley has established that the alleged error in his sentence worked to his actual and substantial disadvantage sufficient to establish prejudice. United States v. Frady, 456 U.S. 152, 170 (1982).

Accordingly, the court concludes that Dooley's petition is not barred as untimely or procedurally defaulted.

## V.

Before turning to the crime of Virginia statutory burglary at issue here, it is necessary to set the analytical stage. The categorical and modified categorical approaches—the only analytical tools district courts wield to determine whether prior convictions amount to

10

violent felonies under the ACCA—were forged in Taylor, 495 U.S. at 600-01. See Mathis v. United States, 136 S. Ct. 2243, 2251 (2016) ("Taylor set out the essential rule governing ACCA cases more than a quarter of century ago. All that counts under the Act, we held then, are the 'elements of the statute of conviction.'"). Thus, since Taylor, courts must begin with the statute of conviction's elements to determine if it aligns with the generic offense.

As to the variant of the categorical approach known as the "modified categorical approach," the Supreme Court allows sentencing courts to consult a limited class of documents to determine which of the alternative crimes within a statute a defendant was convicted. See Shepard v. United States, 544 U.S. 13, 26 (2005) ("We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.").

The Supreme Court has recently twice reversed courts that have misused this approach and improperly consulted Shepard documents to glean facts related to underlying convictions. See Mathis, 136 S. Ct. 2243; Descamps v. United States, 133 S. Ct. 2276 (2013). Both Mathis[5] and Descamps[6] make clear that they are neither changing nor supplementing the modified categorical approach, merely correcting courts that have misapplied Taylor.

---

[5] Mathis stated:

> "[T]he only [use of that approach] we have ever allowed," we stated a few Terms ago, is to determine "which *element[s]* played a part in the defendant's conviction." Descamps, 570 U.S., at ——,133 S. Ct., at 2283, 2285 (emphasis added); see Taylor, 495 U.S., at 602, 110 S. Ct. 2143 (noting that the modified approach may be

In <u>Descamps</u>, the Supreme Court reversed the Ninth Circuit Court of Appeals'

conclusion that district courts could apply the modified categorical approach to California's

burglary statute. 133 S. Ct. at 2293. The Court emphasized that <u>Taylor</u> only allowed

application of the modified categorical approach to the "kind of statute [that] sets out one

or more elements of the offense in the alternative." <u>Id.</u> at 2281. Where "one alternative (say,

a building) matches an element in the generic offense, but the other (say, an automobile)

does not, the modified categorical approach permits sentencing courts to consult a limited

class of documents, such as indictments and jury instructions, to determine which alternative

formed the basis of the defendant's prior conviction." <u>Id.</u> The Supreme Court explained that

the district court and the court of appeals improperly employed the modified categorical

---

employed only to determine whether "a jury necessarily had to find" each element
of generic burglary).

136 S. Ct. at 2253.

[6] <u>Descamps</u> stated the following:

> Our caselaw explaining the categorical approach and its "modified" counterpart all
> but resolves this case. In those decisions, as shown below, the modified approach
> serves a limited function: It helps effectuate the categorical analysis when a divisible
> statute, listing potential offense elements in the alternative, renders opaque which
> element played a part in the defendant's conviction. So understood, the modified
> approach cannot convert Descamps' conviction under § 459 into an ACCA
> predicate, because that state law defines burglary not alternatively, but only more
> broadly than the generic offense.
>
> ...
>
> <u>Taylor</u> recognized a "narrow range of cases" in which sentencing courts—applying
> what we would later dub the "modified categorical approach"—may look beyond
> the statutory elements to "the charging paper and jury instructions" used in a case.
> <u>Id.</u>, at 602, 110 S. Ct. 2143.
>
> ...
>
> Hence <u>Taylor</u> permitted sentencing courts, as a tool for implementing the
> categorical approach, to examine a limited class of documents to determine which
> of a statute's alternative elements formed the basis of the defendant's prior
> conviction.

133 S. Ct. at 2283-84.

12

approach to a statute that was simply broader than generic burglary, rather than comprised of multiple crimes. Id. at 2287-91. The Court emphasized that consultation of Shepard documents is only appropriate to determine which of the alternate crimes within a statute the defendant was convicted, not to glean the actual facts giving rise to the conviction. Id. In Descamps, facts showing the defendant's actions were within the bounds of generic burglary were irrelevant because California's burglary statute was overbroad, as it encompassed both lawful and unlawful entry with the intent to commit a crime. Id. at 2288-89. Where underlying crimes categorically are not violent felonies, district courts are precluded from using the modified categorical approach to determine whether the underlying convictions happen to fall within the generic offense. Id.

Mathis, the Supreme Court's most recent opinion on the modified categorical approach, again reversed a decision that violated Taylor's instruction. 136 S. Ct. at 2257. In Mathis, the Court addressed the divisibility of statutes. Id. at 2248-50. Divisible statutes are those that include differing, alternative elements that must be proven to sustain a conviction. Id. Such statutes allow use of the modified categorical approach as they include multiple crimes. Id. However, statutes that merely contemplate alternative means of accomplishing a single crime are not divisible. Id. Rather, such statutes remain indivisible and, under Taylor, are subject only to a purely categorical analysis. Id. Mathis addressed Iowa's burglary statute which encompassed unlawful entry of "any building, structure, or land, water or air vehicle." Id. at 2250 (emphasis and brackets omitted) (quoting Iowa Code § 702.12). After consulting case law from Iowa's highest court, the Supreme Court concluded that the locations listed in the statute were alternate means of fulfilling the locational element. Id. Such alternate means

13

did not permit use of the modified categorical approach and rendered the statute overbroad under the categorical approach. As will be explained, <u>Mathis</u> compels the same result here.

## VI.

Pursuant to <u>Taylor</u>, 495 U.S. at 600-01, the court first turns to Virginia's statutory framework to determine whether Dooley's offense of conviction aligns with the generic burglary offense enumerated in the ACCA.

Virginia's most basic burglary statute, essentially codifying the common law, makes it unlawful for any person to "break and enter the dwelling house of another in the nighttime with intent to commit a felony or any larceny therein . . . ." Va. Code Ann. § 18.2-89.

The next two sections of Virginia's criminal code contain two versions of statutory burglary, expanding common law "burglary to include other structures." <u>Allard v. Commonwealth</u>, 480 S.E.2d 57, 64 (Va. Ct. App. 1997). The first iteration, found in Virginia Code § 18.2-90, has changed over the years. The version of § 18.2-90 in force at the time of Dooley's conviction in 2005 states as follows:

> **§ 18.2-90. Entering dwelling house, etc., with intent to commit murder, rape, robbery or arson; penalty.**—If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house or an adjoining, occupied outhouse or in the nighttime enters without breaking or at any time breaks and enters or enters and conceals himself in any building permanently affixed to realty, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape, robbery or arson in violation of §§ 18.2-77, 18.2-79 or § 18.2-80, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony. However, if such person was armed with a

14

deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

Dooley was not convicted of either Virginia Code §§ 18.2-89 or 18.2-90, but rather of a third Virginia burglary statute, Virginia Code § 18.2-91. At the time of his conviction, that statute read:

> § 18.2-91. Entering dwelling house, etc., with intent to commit larceny, assault and battery or other felony. — If any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson in violation of §§ 18.2-77, 18.2-79 or § 18.2-80, or if any person commits any of the acts mentioned in § 18.2-89 or § 18.2-90 with intent to commit assault and battery, he shall be guilty of statutory burglary, punishable by confinement in a state correctional facility for not less than one or more than twenty years or, in the discretion of the jury or the court trying the case without a jury, be confined in jail for a period not exceeding twelve months or fined not more than $2,500, either or both. However, if the person was armed with a deadly weapon at the time of such entry, he shall be guilty of a Class 2 felony.

As evident from the statutory language, all of these Virginia burglary statutes share three common elements: (1) an unlawful or unprivileged entry; (2) into a covered location; and (3) with the intent to commit a crime.[7]

## A.

In <u>Taylor</u>, 495 U.S. at 598, the Supreme Court defined generic burglary—burglary that qualifies as a violent felony under the enumerated clause of the ACCA—as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." In so holding, the Court noted that state crimes that allowed for burglary

---

[7] A fourth Virginia burglary statute, § 18.2-92, not applicable here, also shares these elements and makes it unlawful to break and enter into an occupied dwelling with the intent to commit other misdemeanors. See <u>Johnson v. Commonwealth</u>, 444 S.E.2d 559, 561-62 (Va. Ct. App. 1994).

15

of places other than buildings, such as automobiles, swept more broadly than generic

burglary, and were thus excluded from the definition of generic burglary. Id. at 591. As the

Fourth Circuit recently explained in United States v. White, 836 F.3d 437, 445 (4th Cir.

2016):

> Generic burglary's "building or other structure" element does
> not encompass every enclosure. For example, in Shepard v.
> United States, 544 U.S. 13, 15-16 (2005), the Supreme Court
> stated that the generic offense refers to burglary "committed in
> a building or enclosed space . . . not in boat or motor vehicle."
> Similarly, the Supreme Court recently found an Iowa burglary
> statute to encompass conduct outside the bounds of generic
> burglary because the statute specified that the crime could occur
> in a "land, water, or air vehicle." Mathis, 136 S. Ct. at 2250
> (quoting Iowa Code § 702.12 (2013)); see also Taylor, 495 U.S.
> at 599 (describing a state burglary offense that prohibited
> breaking and entering "any booth or tent, or any boat or vessel,
> or railroad car" as nongeneric burglary (quoting Mo. Rev. Stat. §
> 560.070 (1969) (repealed))).

Common law burglary, as codified in Virginia Code § 18.2-89, limits the locational

element of § 18.2-89 to dwelling houses. As such, it squarely falls within Taylor's definition

of generic burglary and qualifies as a violent felony under § 924(e).

The next two versions of statutory burglary, Virginia Code §§ 18.2-90 and 18.2-91,

share two elements—unlawful or unauthorized entry and location—and differ only as to the

intent necessary to violate the statute. As in Mathis, the issue here is whether the locational

element of Virginia statutory burglary as set forth in Virginia Code § 18.2-90 is broader than

generic burglary.[8]

When viewed through the lens of the categorical approach, there is no doubt that

Virginia Code § 18.2-90 sweeps more broadly than Taylor's definition of generic burglary.

---

[8] While Dooley was convicted of a violation of Virginia Code § 18.2-91, that statute makes it unlawful to commit any of the acts mentioned in § 18.2-90, albeit with different intent. As such, the court's analysis must focus on § 18.2-90.

16

For example, the version of § 18.2-90 violated by Dooley encompasses criminal activity that occurs in "any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used a dwelling or place of human habitation." Such language categorically takes § 18.2-90 beyond generic burglary.

## B.

However, as noted above, where a statute consists of multiple crimes, some of which rise to the level of an ACCA violent felony and some of which do not, the court is permitted to apply the modified categorical approach. Before invoking the modified categorical approach, the court must decide the threshold question of whether § 18.2-90 is divisible in a legally significant way. In this case, the principal question raised by the parties is whether the disjunctive list of locations contained in § 18.2-90 amounts to alternative elements constituting different crimes or merely multiple means of committing a single crime. If the statute describes multiple crimes, the court must then determine if any of the crimes amount to generic burglary and thus qualify as ACCA predicates. As the Fourth Circuit noted in United States v. Cabrera-Umanzor, 728 F.3d 347, 352 (4th Cir. 2013) (emphasis omitted):

> General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a violent felony. See Descamps, 133 S. Ct. at 2285 (explaining that the modified categorical approach provides a "mechanism" for comparing the prior conviction to the generic offense "when a statute lists multiple, alternative elements, and so effectively creates several different crimes.... [and] at least one, but not all of those crimes matches the generic version" [ ]); [United States v.] Gomez, 690 F.3d [194,] 199 [(4th Cir. 2012)] ("[C]ourts may apply the modified categorical approach to a statute only if it contains divisible categories of proscribed conduct, at least one of which constitutes—by its elements—a [qualifying conviction].").

17

The court concludes that Virginia Code § 18.2-90 does not create several different crimes. Rather, its locational element sets forth alternative places where the single crime of statutory burglary may be committed. There is no difference in statutory penalties for unlawful entry into the alternative locations listed in the statute. As such, Mathis requires that the court consider these alternative locations as means by which the singular crime of statutory burglary may be committed, rather than elements of separate crimes. Accordingly, the court is not permitted to use the modified categorical approach.

### 1.

District courts must consult state law to determine whether a disjunctive list in a state statute amounts to means or elements. Mathis, 136 S. Ct. at 2256. A number of Virginia appellate decisions address whether certain places fall within the locations set forth in § 18.2-90, but none squarely answer the means/element inquiry posed in Mathis. For example, in Dalton v. Commonwealth, 418 S.E.2d 563 (Va. Ct. App. 1992), the court addressed the question whether a fenced area that was used to store repaired lawn mowers was a storehouse as that term is used in the statute. Citing Compton v. Commonwealth, 55 S.E.2d 446 (Va. Ct. App. 1949), concerning a chicken house, Graybeal v. Commonwealth, 228 Va. 736, 324 S.E.2d 698 (1985), concerning mobile homes or trailers used for resale or display, and Crews v. Commonwealth, 352 S.E.2d 1 (Va. Ct. App. 1987), concerning a school bus converted for storage, the Dalton court held that in order for a structure to be the subject of burglary, it must be affixed to the ground and have walls and a roof. The court has considered whether the requirement that a structure be affixed to the ground constitutes an element. But based on Mathis, the court does not read these cases to create separate crimes

18

with separate elements. One does not commit a different crime under this statute by breaking into a storehouse as opposed to an office or a ship.[9] Rather, these are alternative places—or "means" in Mathis' parlance—to commit the same crime. In other words, there is no elemental difference between burglary of a storehouse versus burglary of an office or ship. That is the teaching of Mathis.

2.

Mathis, of course, dealt with the Iowa burglary statute and determined that the places listed in the statute where burglary may occur amount to "brute facts" or "means" of committing a singular crime, rather than elements creating separate crimes. The Court gave weight to how Iowa courts viewed the various places listed in the statute, citing two cases, State v. Duncan, 312 N.W.2d 519, 523 (Iowa 1981), and State v. Rooney, 862 N.W.2d 367, 376 (Iowa 2015).

Vincent Duncan was charged with committing one count of Iowa second degree burglary. The first question considered by the Iowa Supreme Court was whether Duncan could be charged with burglary as to a marina and a boat located therein in a single count. The court held "that the occasion involving burglary of the marina and the boat could be charged as one burglary consisting of the marina and boat conjunctively or alternatively and could be correspondingly submitted to the jury." Duncan, 312 N.W.2d at 523. As to whether

---

[9] Many years ago, the Supreme Court of Virginia stated just that.

> Under Code, §§ 18-160 and 18-161 [predecessor burglary statutes], housebreaking or storebreaking, as a consummated crime, includes both a nighttime entry without breaking and a breaking and entry in the daytime or nighttime, under stated conditions, as precisely the same felony. There is no distinction in the degree or class of crime or in the measure of its punishment.

Willoughby v. Smyth, 194 Va. 267, 271, 72 S.E.2d 636, 638 (1952).

19

the jury must agree on whether the marina was burgled as opposed to the boat, the Iowa

court stated:

> At this point another principle intervenes. "It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and part upon another." People v. Sullivan, 173 N.Y. 122, 127, 65 N.E. 989, 989 (1903). Stated differently, "(I)f substantial evidence is presented to support each alternative method of committing a single crime, and the alternatives are not repugnant to each other, then unanimity of the jury as to the mode of commission of the crime is not required." State v. Arndt, 12 Wash. App. 248, 252, 529 P.2d 887, 889 (1974). See also 75 Am. Jur. 2d Trial § 884, at 760 (1974) ("A conviction will not be set aside because of an instruction which permits a conviction notwithstanding a difference between jurors as to which of two contradictory facts, each consistent with guilt, is established by the evidence."); Annot., 72 A.L.R. 154 (1931). . . .

Id. at 523–24.

Rooney involved burglary of a condemned house scheduled for demolition. The

Supreme Court of Iowa, addressing the locational aspect of the Iowa burglary statute, stated

"[i]t is true that the legislature has broadly phrased the element of place and we, as a result,

have found the element satisfied in a wide variety of contexts." 862 N.W.2d at 376. The

same is true in Virginia.

Indeed, an examination of the Iowa and Virginia decisions concerning the place or

locational element of each state's statute yields no material difference, suggesting that the

Mathis Court's conclusion as to Iowa applies to Virginia as well. For example, compare the

Iowa decision in State v. Hill, 449 N.W.2d 626, 628 (Iowa 1989), with the Virginia decision

in Dalton, 418 S.E.2d at 563. Hill was convicted of stealing pistons from a fenced enclosure

20

behind an auto parts store. The Iowa court considered whether the fenced enclosure fell within the definition of an appurtenance under the Iowa statute. Just as the Virginia court in Dalton decided that the fenced area containing lawn mowers fell within the definition of a storehouse under the Virginia statute, the Iowa court in Hill determined that the fenced area containing pistons fell within the definition of an appurtenance under the Iowa statute. Because these Virginia and Iowa decisions so closely track each other as to the proof required to satisfy the locational element, it stands to reason that the conclusion of the Mathis Court that the list of locations contained in the Iowa burglary statute are best considered as "brute facts" or "means," rather than elements, applies as well in Virginia.

### 3.

The Supreme Court of Virginia's decision in Graybeal v. Commonwealth, 228 Va. 736, 324 S.E.2d 698 (1985), provides an instructive contrast. Graybeal concerned whether the final portion of the list of locations in Virginia Code § 18.2-90—"any automobile, truck or trailer"—contains an added proof requirement. Specifically, Graybeal makes it clear that to sustain a conviction for breaking and entering into an automobile, truck or trailer under § 18.2-90, the statute provides that the prosecution had to meet the requirements of the statute and prove that the trailer was used as a dwelling or place of human habitation. Id. at 739, 324 S.E.2d at 699; see Allard, 480 S.E.2d at 64 ("With respect to structures other than a dwelling house of another, the legislature specifically chose to impose the habitability element only for automobiles, trucks or trailers."). Thus Graybeal commands the conclusion that breaking and entering an automobile, truck or trailer is not merely an alternative means of violating § 18.2-90. Rather, a burglary conviction under § 18.2-90 for breaking and

21

entering an automobile, truck or trailer requires additional proof—use as a dwelling or place of human habitation—not applicable to other locations listed in the statute. But that difference is of no consequence to the court's conclusion that the ACCA enhancement does not apply. Burglaries of automobiles, trucks, or trailers, clearly do not align with generic burglary. The remainder of § 18.2-90 encompasses burglaries of ships, vessels, and railroad cars, among other structures. Thus, the locales subject to burglary in § 18.2-90 and described in Graybeal—those that require proof of use as a dwelling or for human habitation and those that do not—both are categorically broader than generic burglary. As such, the court cannot employ the modified categorical approach. Cabrera-Umanzor, 728 F.3d at 352.

The court is mindful of the Fourth Circuit's holding in United States v. Foster, 662 F.3d 291 (4th Cir. 2011). In Foster, the Fourth Circuit determined that § 18.2-90 was divisible into three clauses:

> The relevant Virginia statute defined breaking and entering as a crime under three separate clauses: (1) an "office, shop ... storehouse, warehouse, banking house, or other house"; (2) a "ship, vessel, or river craft or any railroad car"; or (3) "any automobile, truck, or trailer ... [being] used as a dwelling or place of human habitation." Va. Code § 18.2–90 (1992) (amended 2004).

Id. at 293-94. After considering Graybeal's holding that convictions under the third clause required an added proof requirement, the Fourth Circuit concluded that it could employ the modified categorical approach to determine which of the three clauses was invoked in the underlying conviction. Id. at 294-95. But Foster was decided before Descamps and Mathis were decided, and the Court's subsequent decisions in Descamps and Mathis strongly counsel against use of the modified categorical approach here.

22

This conclusion is bolstered by the Fourth Circuit's more recent decision in United States v. Henriquez, 757 F.3d 144 (4th Cir. 2014). In Henriquez, the Fourth Circuit held that first degree Maryland burglary was broader than generic burglary and thus was not a proper predicate to support a sentencing enhancement under United States Sentencing Guidelines § 2L1.2(b)(1)(A)(ii). Although the Maryland statute in question limited burglary to breaking and entering "the dwelling of another with the intent to commit theft or a crime of violence," Md. Code Ann. Crim. Law § 6-202(a), the Fourth Circuit found there to be "a realistic probability that Maryland's statute covers burglaries of motor vehicles or boats— places that the United States Supreme Court has expressly excluded from generic burglary." Henriquez, 757 F.3d at 146. The Fourth Circuit in Henriquez "employ[ed] the categorical approach here because the crime of which the defendant was convicted has a single, indivisible set of elements." Id. at 147 (internal quotation marks omitted) (quoting Descamps, 133 S. Ct. at 2282).[10] The court's decision also finds support in the Seventh Circuit's post-Mathis decision in United States v. Edwards, 836 F.3d 831, 838 (7th Cir. 2016), where the Seventh Circuit found the list of locations in the Wisconsin burglary statute to be "alternative means rather than elements and [ ] therefore indivisible." But see United States v. Gundy, No. 14-12113 (11th Cir. Nov. 23, 2016) (finding, by a divided panel of the Eleventh Circuit, that the Georgia burglary statute is divisible and applying the modified categorical approach).

---

[10] The Fourth Circuit in United States v. White, 836 F.3d at 444, also recently used the categorical approach to analyze the application of § 924(e) to the West Virginia burglary statute. However, it declined to express an opinion whether the alternative locations specified in the West Virginia statute rendered it divisible for the purposes of applying the modified categorical approach as that issue was neither argued nor addressed by the parties in their briefs. Id. at 446 n.3.

Virginia Code § 18.2-90 is far broader than generic burglary. The most obvious examples of this overbreadth fall at the end of the list. Plainly, unlawful entry of automobiles, trucks and trailers is broader than generic burglary. So, too, with unauthorized entry into ships, vessels, river craft or any railroad car. While the part of the list that covers various types of buildings falls within the bounds of generic burglary, <u>Mathis</u> does not permit the court to divide the statute into separate crimes based on those locales. Accordingly, the court cannot employ the modified categorical approach to determine the specific facts surrounding Dooley's conviction.[11]

### 4.

The court has considered whether § 18.2-90 is divisible based on the time of day of the offense. That is because § 18.2-90 only encompasses breaking and entering or entering and concealing a dwelling house or adjoining outhouse *in the daytime* as opposed to breaking and entering or entering and concealing the other locations listed in the statute *at any time*. In <u>Griffin v. Commonwealth</u>, 412 S.E.2d 709, 711 (Va. Ct. App. 1991), the court stated:

> Thus, whenever there is . . . intent, the timing of the offense is not an essential element of the offense. Since breaking and entering of a dwelling, at any time, is the essential element of the offense, the indictment's allegation that the offense occurred in the daytime is nothing more than surplusage.

---

[11] Near the end of the majority opinion, the <u>Mathis</u> Court suggests that "if state law fails to provide clear answers," federal judges may "peek at the record documents . . . for the sole and limited purpose of determining whether the listed items are elements of the offense." <u>Mathis</u>, 136 S. Ct. at 2256-57 (internal brackets and quotation marks omitted) (quoting <u>Rendor v. Holder</u>, 782 F.3d 466, 473-74 (9th Cir. 2015) (opinion dissenting from denial of rehearing en banc). The court has reviewed the available record documents that concern the statutory burglary conviction set forth in paragraph 24 of the PSR. The indictment charges that "Cody Morris Dooley, did unlawfully and feloniously break and enter the dwelling house of Christy Dawn Scott, located at 3757 Evan Lane, with intent to commit larceny." Were the court to apply the modified categorical approach in this case, it would conclude that the offense of conviction aligns with the generic burglary offense enumerated in the ACCA. However, the purpose of this "peek" at the record documents is to answer the threshold question of whether the statute is divisible, such that the court is permitted to apply the modified categorical approach. As to this issue, the record documents provide no clue helpful to deciphering whether the listed location is a means or an element.

Likewise, there is no merit to the argument, albeit unstated, that the term "dwelling house" used in the first part of the statute adds an element. Although the term "dwelling house" has been defined to mean a place human beings regularly use for sleeping, Turner v. Commonwealth, 531 S.E.2d 619 (Va. Ct. App. 2000), Griffin holds that it is subsumed within the term "other house," as it "necessarily includes any such structure used as a dwelling." Id.

Accordingly, Virginia Code § 18.2-90, taken as a whole, has never qualified as a violent felony under the enumerated clause as it does not square with generic burglary. Rather, Virginia Code § 18.2-90 has only qualified as an ACCA predicate by way of the now-defunct residual clause. As Johnson II and Welch make clear, federal inmates whose sentences were enhanced as a result of the residual clause are entitled to relief under § 2255.[12]

## VII.

Because Dooley's Virginia burglary conviction—now and since Taylor—only qualifies as a predicate felony by way of the residual clause, Dooley's claim is cognizable under Johnson II and his ACCA sentence must be vacated. In short, given the constraints of the categorical approach imposed by Mathis, the court cannot conclude that Dooley's prior statutory burglary conviction meets Taylor's definition of generic burglary.[13] Pursuant to

---

[12] The court has considered whether, without the 2005 statutory burglary conviction, Dooley's record retains three convictions that might enhance his sentenced under the ACCA. United States v. Pettiford, 612 F.3d 270, 275-80 (4th Cir. 2010). The court concludes it does not. Assuming without deciding that Dooley's possession of marijuana with intent to distribute conviction (paragraph 27 of the PSR) and unlawful wounding conviction (paragraph 31 of the PSR) qualify as ACCA predicates, as the PSR determined, Dooley's remaining convictions all appear to be misdemeanors. Thus, Dooley does not have "three previous convictions . . . for a violent felony or a serious drug offense" that would give rise to an enhanced penalty under § 924(e).

[13] Given the difficulties inherent in deciphering the distinction between elements and means, the court views the analysis in this case to be anything but, in Mathis' terms, "easy." 136 S. Ct. at 2256. Compare, for example, the Descamps Court's

Case 7:13-cr-00036-MFU-RSB   Document 66   Filed 01/12/17   Page 25 of 26   Pageid#: 364

<u>Johnson II</u>, the court finds that the 180-month sentence Dooley received is unconstitutional, as it is greater than the 120-month maximum penalty set forth in § 924(a)(2). As such, Dooley's § 2255 motion is **GRANTED**, and the government's motions to dismiss are **DENIED**.

An appropriate Order will be entered.

Entered: 1 - 12 - 2017

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

description of a divisible statute as being the kind of statute that "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile," 133 S. Ct. at 2281, with the conclusion in <u>Mathis</u> that a similar list of places in the Iowa statute, "any building, structure, *[or] land, water or air vehicle*" "are not alternative elements, going toward the creation of separate crimes." 136 U.S. at 2250. At the end of the day, the court, bound by <u>Mathis</u>, is constrained to grant Dooley's petition. At the same time, the court shares the "general concern" explained by Judge Wilkinson in his concurring opinion in <u>United States v. Doctor</u>, No. 15-4764, at 15 (4th Cir. Nov. 21, 2016) (slip op.) "that the categorical approach to predicate crimes of violence is moving beyond what the Supreme Court originally anticipated."

Case 7:13-cr-00036-MFU-RSB   Document 66   Filed 01/12/17   Page 26 of 26   Pageid#: 365